**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIANNA SWEARENGIN,<br>an individual, | )<br>)<br>) | |
| Plaintiff, | )<br>) | No. 24 C 5279 |
| v. | )<br>) | Magistrate Judge Jeffrey Cole |
| THE BOARD OF EDUCATION OF<br>THE CITY OF CHICAGO, and<br>SHEILA BARLOW, in her individual<br>and official capacity, | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

**MEMORANDUM OPINION AND ORDER**

**I.**

Plaintiff has brought a number of claims against the defendants: retaliation for exercising her freedom of speech (Count I), retaliation for exercising her freedom of association with her son (Count II), denial of due process when she was fired without a pre-termination or a post-termination hearing (Count III), violation of the Illinois Whistle Blower Act (Count IV), common law retaliatory discharge (Count V), conspiracy to deprive her of her First Amendment rights (Count VI), and common law intentional infliction of emotional distress (Count VII). The defendants have moved to dismiss all these claim under Fed.R.Civ.P.12(b)(6) with prejudice. To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at

556, 127 S.Ct. 1955). Put simply, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Reviewing those factual allegations at the pleadings stage, the court must accept them as true and view them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024); *Approved Mortg. Corp. v. Truist Bank*, 106 F.4th 582, 588 (7th Cir. 2024). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

The defendants' arguments in their motion ultimately fail to sufficiently adhere to these standards. Obviously, a complaint is always just a compendium of allegations. It is a plaintiff's version of a "story" which may not, in the long run, turn out to be entirely accurate – at least in the eyes of an ultimate fact finder. But, a defendant's initial – or for that matter ultimate – version of events may not necessarily be accurate either. At this early point, however, a defendant – and the court must accept as true the plaintiff's version of events alleged in the complaint – so long, of course, as the adumbration is consistent with pleading requirements under the Federal Rules of Civil Procedure and principles articulated in appropriate case law. "The reason why judges accept a [C]omplaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its factual sufficiency will be tested later—by a motion for summary judgment under Rule 56, and if necessary by trial." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). A defendant cannot – as the defendants' briefs in this case tend to do – ignore certain allegations or construe others in a light more flattering to them. A defendant cannot be dismissive of a complaint's well pled allegations so

2

long as they satisfy the applicable Rules governing the standards by which a pleading must be judged in the face of a Motion to Dismiss a complaint.

## II.
## The Plaintiff's Story

The plaintiff began working at Adam Clayton Powell, Jr. Paideia Academy ("Powell Elementary School"), an elementary school, in 2016. She said she was a "staff member," but her position was classified as "Miscellaneous Employee." [Dkt. #1, Par. 7]. Perhaps these phrases might be legalese or human resources "speak" for "teacher," which is what plaintiff refers to herself as later in her complaint. In any event, after a few years, in the Fall of 2023, her son enrolled there. Not long after that, he became the target of bullies at the school. [Dkt. #1, Par. 11]. Plaintiff reported the bullying to her superior, Sheila Barlow, the school's Principal, but nothing allegedly was done. [Dkt. #1, Par. 12]. Instead, one of plaintiff's colleagues threatened her. [Dkt. #1, Par. 13].

Things came to a head in February of 2024 when three Powell Elementary School attendees attacked plaintiff's son in a school restroom and stole his shoes. [Dkt. #1, Par. 16]. As seems to be the norm nowadays, the three assailants proudly posted their attack on Tik Tok. [Dkt. #1, Par. 17]. When the plaintiff reported this incident to Principal Barlow, Barlow told her that she was not wanted at the school, to "keep [her] mouth shut" about bullying, and threatened plaintiff that her son would be beaten the following year if she didn't stop complaining. [Dkt. #1, Par. 20]. As Barlow did nothing about the situation, about a month later, plaintiff's son was choked in gym class by the same assailants and, once again, they posted their violent handiwork on Tik Tok. [Dkt. #1, Par. 21]. Still, nothing was done about it. Later, one of the three assailants complained to the principal that the plaintiff was trying to intimidate him by following him with her eyes. [Dkt. #1, Par. 26].

3

By this time, plaintiff had had enough of her complaints and fears for her son's well-being going unaddressed and reposted the assailants' videos for commentary on social media and posted that Principal Barlow had done nothing about the incidents. This is what finally got the attention of Principal Barlow. She drafted a statement for CPS that said:

> On social media platforms, Tianna Swearengin is posting the student's names (D and A) and calling them names. There are individuals in the comments stating that they wanted to harm the students. Tianna Swearengin also posted that I as the principal and the dean did nothing about the incident. I immediately contacted CPS Safety and Security to make them aware.

[Dkt. #1, Par. 28]. Principal Barlow had the bullies make statements that plaintiff was making faces at them. [Dkt. #1, Par. 29]. Just a couple of days later, Jennifer Reger, Executive Director of Administrative Hearing, sent the plaintiff a termination letter. Plaintiff was fired for "discourteous treatment of students and staff members and engaged in other inappropriate behavior . . . ." [Dkt. #1, Par. 30]. Plaintiff was "barred from working in any capacity for CPS, but she was also barred from volunteering in any capacity at a CPS-affiliated event." [Dkt. #1, Par. 31].

Plaintiff's sister wrote to CPS to explain the situation, relating the attacks on her nephew and noting the assaults were ignored by Principal Barlow. [Dkt. #1, Par. 32]. Plaintiff wrote to CPS relating the attacks on her son and explaining that she had been fired for posting the video after the principal refused to take any action. [Dkt. #1, Par. 34]. She asked that the "do not hire" designation be removed, but CPS, through Reger, refused. [Dkt. #1, ¶ 35].

### III.
### Federal Claims

### A.
### First Amendment Retaliation Claims (Counts I and II)

Like all public employees, employees do not relinquish their First Amendment rights by

4

accepting government employment. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022); *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). On the other hand, government employers, like all employers, must be able to curtail speech that interferes with the operations of the government entity in order to promote "the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). In cases like these, courts apply a two-step balancing test which began with *Pickering* and was later modified by *Connick v. Myers*, 461 U.S. 138 (1983). At the first step, a court must ask if the employee spoke (1) as a private citizen and (2) on a matter of public concern. *Kennedy*, 597 U.S. at 527–28; *Connick*, 461 U.S. at 147; *Pickering*, 391 U.S. at 568; *Brockett v. Effingham Cnty., Illinois*, 116 F.4th 680, 683–84 (7th Cir. 2024). If the answer to either of these questions is "no," then the employee has no First Amendment cause of action. *Garcetti*, 547 U.S. at 418. Otherwise, the court proceeds to a second step, asking whether the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees "outweighs" the interests of the [employee], as a citizen, in commenting upon matters of public concern. *Pickering*, 391 U.S. at 568; *Brockett*, 116 F.4th at 684.

The defendants argue that the plaintiff's First Amendment retaliation claims must be dismissed because (1) the plaintiff did not speak as a private citizen but as a public employee pursuant to her official duties; (2) the plaintiff did not speak on a matter of public concern; and (3) the Board of Educations's interest in efficiency outweighs the plaintiff's interests.

The defendants contend that the plaintiff was "acting in her role as a CPS employee when she reported multiple instances of employee and student misconduct to the administration at Powell elementary School. . . . Plaintiff alleges that as a 'teacher,' she felt compelled to report the incidents."

Id. at ¶ 12. [Dkt. #15, at 5]. As was stressed earlier, however, the court must accept a complaint's allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Emerson*, 109 F.4th at 941; *Approved Mortg. Corp.*, 106 F.4th at 588. Yes, the complaint says at one point that the plaintiff is a teacher [Dkt. #1, Par. 12], but, more importantly, the complaint repeatedly makes clear that plaintiff is the mother of the student who, according to the complaint, was being bullied. [Dkt. #1, Pars. 10, 11, 12, 16-21, 43]. Being a teacher does not trump being a mother, nor does the former eliminate the fact of the latter. Here, as always, "reality must dominate judgment." *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 774 (1984). There is more than enough in the complaint to allege that plaintiff was speaking as a private citizen, and the allegations in the complaint make it certainly more than just plausible that that was the greater motivation for her speaking out. Tellingly, the defendant seems to unwittingly concede this when it argues that plaintiff was not speaking on a matter of public concern because she was motivated out of "concerns about her own child." [Dkt. #15, at 7]. "The fact that an employee has a personal stake in the subject matter of the speech does not necessarily remove it from the scope of public concern." *Spiegla v. Hull*, 371 F.3d 928, 938 (7th Cir. 2004). The complaint alleges more than enough to get over defendants' private citizen/public employee objection.

This provides a segue to the most surprising assertion in the defendants' brief namely that the plaintiff did not speak on a matter of public concern. [Dkt. #15, at 6-7]. It is difficult to imagine a matter of public concern more dire and of greater import than that alleged in the challenged complaint. "[W]here the employer brings a motion to dismiss the employee's free speech claim on the basis of the pleadings rather than on the facts in the record, the speech may be presumed to involve a matter of 'public concern' if it touches upon 'any matter for which there is potentially a

public interest." *Pugel v. Bd. of Trustees of Univ. of Illinois*, 378 F.3d 659, 668 (7th Cir. 2004). Only jaundiced partisanship could suggest that, at this point in our history, bullying in our public schools is not a "matter for which there is potentially a public interest." I am confident that the Board of Education of the City of Chicago – or a Board of Education anywhere in this country – would take the stance that it does not regard bullying in its schools as a matter of public interest. Yet, curiously that seems to be the stance taken in the defendants' brief. The public pays for those schools and pays the salaries of administrators like Principal Barlow, and pays the salaries of the members of the Board. The public certainly has a strong interest in the safety of the students in those schools and a strong interest in whether administrators and Board members are adequately responding to attacks of students on school grounds made known to them. Not surprisingly, other courts have indicated this is a matter of public importance. *See, e.g., Peoples v. Oswego Cmty. Sch. Dist.*, No. 19-CV-00568, 2020 WL 1330652, at *7 (N.D. Ill. Mar. 22, 2020); *Meredith v. Cnty. of Jefferson*, No. 3:18-CV-105, 2019 WL 1437821, at *23 (W.D. Pa. Apr. 1, 2019); *Thibault v. Spino*, 431 F. Supp. 3d 1, 10 (D. Conn. 2019). Indeed, the City of Chicago has conceded that this is a matter of public concern. Thus, the City's own website has stressed: "There are about 160,000 children that miss school every day out of fear of being bullied. Nationwide surveys of 6th through 10th graders conducted by the national institute of Child Health and Human Development revealed that 17% of children in the 6th through 10th grade are bullied sometimes or weekly, while 19% bully others sometimes or weekly." Https://www.chicago.gov/city/en/depts/cdph/supp_info/behavioral-health/ bullying_prevention1.html. The State of Illinois has echoed the same concerns. *See, e.g.,* 105 ILCS 5/27-23.7(a). It is of no legal significance that the student who was repeatedly attacked at the school was plaintiff's son. "A personal aspect contained within the motive of the speaker does not

7

necessarily remove the speech from the scope of public concern." *Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2002). The plaintiff's retaliation claims will not be dismissed on the basis of the defendants' contention that the case does not involve a matter of public concern.

We then turn to the question of whether the government's "interests as employer outweigh even an employee's private speech on a matter of public concern." *Kennedy*, 597 U.S. at 531; *Brockett*, 116 F.4th at 684; *Hicks v. Illinois Dep't of Corr.*, 109 F.4th 895, 900 (7th Cir. 2024). Here, the defendants argue that "the Board's interests in maintaining efficacy within its schools certainly outweighs Plaintiff's interests," and "that it is self-evident that CPS, an entity entrusted with both the education and welfare of students, must be able to protect those students from imminent threats of harm." [Dkt. #15, at 7-8]. But, according to the complaint, neither CPS nor Principal Barlow were doing those things. A student was attacked – at least twice – and the school administrator told the employee who reported what had occurred – at least twice – to shut up about it or things might get worse for the student. If true, these allegations are of significant public concern.

Moreover, the defendants' argument is rather vague, and that's unhelpful in the context of an inquiry that the Supreme Court has said "sometimes has proved difficult." *Garcetti*, 547 U.S. at 418. The balancing part of this inquiry is a highly fact-intensive one. *Hicks*, 109 F.4th at 901; *McGreal v. Ostrov*, 368 F.3d 657, 675 (7th Cir. 2004). It involves an examination of several interrelated factors, *Hicks*, 109 F.4th at 901, which the defendants have failed to sift through in their briefing. One cannot simply pronounce something "self-evident" and have a complaint dismissed. "*Pickering* balancing is not an exercise in judicial speculation." *Harnishfeger v. United States*, 943 F.3d 1105, 1116 (7th Cir. 2019)(quoting *Gustafson*, 290 F.3d at 909). Indeed, speculation is anathema to informed decision making.

8

Overall, the question of whether an employer's interests outweigh an employee's First Amendment rights is generally ill-suited to resolution "through the lens of [a] liberal, undemanding pleading standard." *Brockett*, 116 F.4th 684. If the defendants were to move for summary judgment on the *Pickering* balancing defense, they would have to lay out the elements of the defense, cite the facts which they believe satisfy those elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the plaintiff. *Harnishfeger*, 943 F.3d at 1116. Obviously, the defendants have fallen far short of that here, and, in any event, this is a Rule 12(b)(6) motion, where a plaintiff is entitled to the benefit of the doubt. The defendants' motion to dismiss Counts I and II of the complaint is denied.

## B.
## Qualified Immunity

The defendants also argue that Principal Barlow is entitled to qualified immunity because her conduct did not violate a clearly established constitutional right. *See, e.g., Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). But, as noted earlier, as with a fair portion of the Motion to Dismiss, its argument puts out of view the fact that the complaint's well pled allegations must be taken as true, and all reasonable inferences must be drawn in plaintiff's favor. *See, e.g., Emerson*, 109 F.4th at 941; *Approved Mortg. Corp*., 106 F.4th at 588. Here, the defendants' argument is based on their interpretation of the complaint and what they feel is true; this portion of the defendants' motion to dismiss cannot be granted.

The flaw in the defendants' argument is made clear when its interpretation of the complaint is set against its actual allegations. According to the defendants' reading of the complaint:

> Here, Principal Barlow did not report Plaintiff's actions to CPS superiors to silence
> or retaliate against Plaintiff for advocating for her son. Rather, it is clear from

> Plaintiff's Complaint that it was Principal Barlow's intention and priority to protect
> the students who were entrusted in her care. See Compl. ¶ 28.

[Dkt. #15, at 3-4].  But, that is not clear in the least. What is clear is that the complaint alleges that plaintiff's son was attacked by two or three Powell Elementary attendees on at least two occasions – in a bathroom and during gym class. [Dkt. #1, Pars. 16, 21].  The bullies recorded their attacks and posted them on Tik Tok.  [Dkt. #1, Pars. 16, 21].  When plaintiff complained, Principal Barlow initially instructed her staff to do nothing [Dkt. #1, Par. 19].  She later told plaintiff that she was not wanted in her job, and that she should shut up about the incidents or her son was likely to be attacked in high school as well. [Dkt. #1, Par. 20].  Repeatedly dismissed, rebuffed, and threatened, the plaintiff took the matter to the public forum. Principal Barlow then set plaintiff's termination in motion, and it happened in very quick succession. So, no, nothing in the complaint suggests that Principal Barlow was motivated by a desire to "protect the students who were entrusted to her care," although Principal Barlow may think otherwise.  In fact, according to the facts set forth in the complaint, she did not even follow the Chicago Public Schools Policy for Addressing Bullying that the defendants attach to their Motion to Dismiss. [Dkt. #15-1, Page 7-9 of 12].  Instead – again, according to the allegations in the complaint – she did exactly what CPS Policy warned her *not*  to do: "Dismiss bullying as typical student behavior or assume it is not serious."  [Dkt. #15-1, Page 9 of 12]. It is difficult to imagine a complaint that more completely informs the defendant of the claims against it. Whether those allegations are true or not remains to be seen. But the contention that what is alleged is insufficient is rejected.

## C.
## Due Process Claim (Count III)

Defendants contend that the denial of due process claim in Count III must be dismissed

because plaintiff was an at-will employee with no property interest in her job and was, therefore, not entitled to any due process. In order to proceed on a due process claim, a plaintiff has to allege the existence of a constitutionally-protected property interest in continued employment. *O'Gorman v. City of Chicago*, 777 F.3d 885, 890 (7th Cir. 2015); *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir.2007). Property interests are not created by the Constitution, but rather are created and defined by existing rules or understandings that stem from an independent source such as state law. *O'Gorman*, 555 F.3d at 590; *Chicago Teachers Union, Local No. 1, Am. Federation of Teachers v. Bd. of Educ. of the City of Chicago*, 662 F.3d 761, 763 (7th Cir.2011). Such property interests usually arise from rights created by state statutes, state or municipal regulations or ordinances, and contracts with public entities. *O'Gorman*, 555 F.3d at 590; *Ulichny v. Merton Community School Dist.*, 249 F.3d 686, 700 (7th Cir.2001).

Here, the plaintiff alleges that:

> [a]s a public employee, [she] was entitled to both a pre-termination hearing prior to her termination, as well as a post-termination hearing after her termination. This pre-termination hearing is an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. . . . A public entity prior to the termination must provide oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present her side of the story.

[Dkt. #1, Pars. 69-70]. But, where does such entitlement come from? Indeed, it would seem that, under Illinois law, only tenured teachers have a constitutionally protected property interest in continued employment, a necessary predicate to a due-process claim. *Mascow v. Bd. of Educ. of Franklin Park Sch. Dist. No. 84*, 950 F.3d 993, 995 (7th Cir. 2020); *Harbaugh v. Bd. of Educ. of City of Chicago*, 716 F.3d 983, 988 (7th Cir. 2013). Perhaps plaintiff has some other source of a property

11

interest in mind – she speculates in her response brief that it might be an employment regulation, an employee handbook, or other policy statement [Dkt. #21, at 6] – but she fails to allege what it is. Accordingly, the plaintiff's due process claim (Count III) is dismissed, but contrary to the defendants' wishes, it is dismissed without prejudice. *See O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 628 (7th Cir. 2020)("Ordinarily, after an original complaint is dismissed under Rule 12(b)(6), a court should allow at least one opportunity to amend the complaint before dismissing the entire action."); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).

### D.
### Civil Conspiracy Claim (Count VI)

A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015); *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir.1988). The elements of a conspiracy claim are: (1) the individuals reached an agreement to deprive plaintiff of her constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018); *Beaman*, 776 F.3d at 510. The plaintiff falls short of stating a claim under this Count. Contrary to her response brief, her allegations have no common ground with those found sufficient in *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012), where "several members of the same police unit allegedly acted in the same inexplicable way against a plaintiff on many different occasions, . . . ." Plaintiff may have alleged a pattern of harassment as in *Geinosky* but, according to the complaint, the only one doing the harassing was Principal Barlow. The principal then crafted the tale to suit her needs in a letter to CPS, which then

12

acted upon the principal's letter. Capping that off with a conclusory allegation that "Defendants, along with Jennifer Reger, Executive Director of Administrative Hearings, made an agreement to deprive [plaintiff] of her constitutional rights" [Dkt. #1, Par. 86] is not enough. Indeed, as the complaint reads, Reger did not have what the plaintiff considers to be the real story, only Barlow's version. Accepting the complaint's allegations as true, as we must, Principal Barlow was driving the retaliation school bus, and Reger and CPS were merely the last stop. The defendants' Motion to Dismiss is granted as to Count VI, and the plaintiff's civil conspiracy claim is dismissed, again, without prejudice. *O'Brien*, 955 F.3d at 628; *Runnion*, 786 F.3d at 519.

## IV.
## State and Common Law Claims

### A.
### Illinois Whistleblower Act (Count IV)

In their reply brief, the defendants withdraw the bulk of their arguments for dismissal of the plaintiff's Illinois Whistleblower Act claim[1] because they misread the plaintiff's claims being brought under 740 ILCS 174/15. [Dkt. #22, at 8]. Instead, the complaint specifically alleges that Count is brought under *740 ILCS 174/20.1.* [Dkt. #1, Par. 76 (emphasis added)]. Under Sec. 20.1:

> Any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliatory action by an employer under this Act if the act or omission would be materially adverse to a reasonable

---

[1] While it is unclear whether defendant is withdrawing its Tort Immunity Act arguments as well, their Reply brief [Dkt. #22, at 8] ignores the plaintiff's arguments and case citations for why tort immunity does not apply here [Dkt. #21, at 9-11] and, so, those points are conceded. *Webb v. Frawley*, 906 F.3d 569, 581 (7th Cir. 2018)("[P]laintiff has waived any counterarguments he may have had by not responding to Frawley's argument on this topic in his reply brief."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)("Failure to respond to an argument . . . results in waiver."); *United States v. Farris*, 532 F.3d 615, 619 (7th Cir.2008) ("[Defendant] failed to respond to the Government's argument in a Reply Brief, and accordingly, we find that [Defendant] waived his sufficiency of the evidence challenge[.]").

employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing.

740 ILCS 174/20.1. The defendants argue in their reply brief that plaintiff fails to present facts showing she was terminated because she reported that her son was being bullied. [Dkt. #22, at 8]. But, again, the defendants clearly demand too much from the complaint. Here, the allegations adequately state that plaintiff was fired in retaliation for complaining about her son being bullied and reposting the bullies' own videos of those attacks on social media when Principal Barlow repeatedly refused to take any action. In response to the social media reposting, Principal Barlow wrote to CPS and plaintiff's termination followed. [Dkt. #1, Par. 78]. Surely, these facts are adequate to state a claim at the pleading stage.

## B.
## Retaliatory Discharge (Count V)

Defendants' argument for dismissal of the retaliatory discharge claim (Count V) depends entirely on the failure of plaintiff's Illinois Whistleblower Act claim. [Dkt. #15, at 13]. But, as already noted, the defendant has misread the Illinois Whistleblower Act and thus the challenged claim must stand. Based on the defendants' Reply brief, it would appear that the defendants' only remaining argument for dismissal of Count V is based on the public policy argument that was essentially rejected in connection with Counts I and II.

An employee can state a valid retaliatory discharge claim under Illinois' common law if he or she alleges they were discharged from their employment in retaliation for certain activities and "that the discharge violated the clear mandate of public policy." *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 920 (7th Cir. 1990); *Callahan v. Edgewater Care & Rehab. Center, Inc.* 374 Ill.App.3d 630, 313 Ill.Dec. 568, 872 N.E.2d 551, 552–53 (Ill.App.Ct. 2007). As already discussed,

14

it is impossible to accept the defendants' argument regarding whether bullying in our schools is a matter of public concern. It is, not only by the defendants' own admissions and those of other Illinois officials, but of common sense, which is not to be ignored. *See Peak v. United States*, 353 U.S. 43, 46 (1957)("Common sense often makes good law."). *See also United States v. Ingham*, 502 F.2d 1287, 1291 (5th Cir. 1974)("The law... allows for common sense."). Not surprisingly, as the complaint alleges, Illinois has a clearly mandated public policy in favor of providing a safe and civil school environment for students to learn and achieve without bullying. [Dkt. #1, Par. 80]; see 105 ILCS 5/27-23.7(a). The defendants, of course, have a different view of the events and gloss over the attacks on plaintiff's son and recast them as "[plaintiff's] son in the bathroom with other students from Powell" [Dkt. #15, at 2, 6] or "elementary students in . . . an intimate setting" [Dkt. #22, at 9]. But, here as always, "we must think things not words..." Holmes, *Law and Science and Science and Law*, 12 Harv.L.Rev. 443, 460 (1899). They claim, without evidence – of course not, as this is a Rule 12(b)(6) proceeding – that the bullies were threatened on social media. Perhaps; perhaps not. It's perhaps worth noting that it was the bullies, craving attention, who originally posted their attacks on social media, and the defendants seemed to have no concern about that, however humiliating it might have been to plaintiff's son and however distressing it might have been to the plaintiff. But those are matters for summary judgment or trial. *Szabo*, 249 F.3d at 675. Overall, the defendants' softening of the plaintiff's allegations and the seemingly dismissive view of a principal ignoring a student being attacked and choked and having his shoes stolen tends to undermine their stance that they are concerned with "protecting school environments from such endangerment . . . ." [Dkt. #22, at 9]. The defendants' Motion to Dismiss Count V's retaliatory discharge claim is denied.

**C.**
**Emotional Distress (Count VII)**

The defendants argue that the plaintiff's claim for intentional infliction of emotional distress must be dismissed because she does not sufficiently plead extreme and outrageous conduct. [Dkt. #15, at 13-14]. In Illinois, a claim for intentional infliction of emotional distress involves three elements: that the actor's conduct was extreme and outrageous; that the actor intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would have caused such distress; and that the conduct in fact caused severe emotional distress. *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). The tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Sun*, 99 F.4th at 1013. In the employment context, a claim can arise where an employer "clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Trahanas v. Nw. Univ.*, 64 F.4th 842, 860 (7th Cir. 2023). The everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations do not give rise to emotional distress claims, otherwise nearly every employee would have a cause of action. *Sun*, 99 F.4th at 1013; *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006). As has been already been seen, the defendants clearly have a different perspective on what went on at Powell Elementary School, and they also have a very different perspective on what is extreme or "outrageous" conduct. But, once again, accepting the plaintiff's allegations as true and drawing all reasonable inferences in her favor, the complaint easily passes muster.

Principal Barlow held a position of authority over plaintiff. She was also in charge of the school plaintiff's son attended, and as is undeniable, and, as we are told repeatedly in defendants'

16

submissions, she had a duty to keep students safe. But when plaintiff complained to the principal about attacks on her son, Barlow not only ignored those attacks and left plaintiff's son to whims of the bullies, she told plaintiff to stop complaining or her son would likely continue to be beaten. In the context of school bullying and a mother's concerns for her child, that certainly qualifies as outrageous and would clearly cause any mother emotional distress. With nowhere to turn, plaintiff took the matter to the public forum and, soon thereafter, was terminated at the behest or at least at the suggestion of Principal Barlow. That made the conduct alleged only more outrageous and the distress more severe. The defendants' motion to dismiss this Count must be denied.

### D.
### Punitive Damages

Finally, the defendants argue that because the Board of Education is a government agency and local government entity, it is immune from punitive damages on the plaintiff's state law claims. *See* 105 ILCS 5/34-2; *Biggs v. Chicago Bd. of Educ.*, 82 F.4th 554, 557 n.1 (7th Cir. 2023); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); 745 ILCS 10/2-102 ("Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party."); *Simonsen v. Bd. of Educ. of City of Chicago*, No. 01 C 3081, 2001 WL 1250103, at *8 (N.D. Ill. Oct. 17, 2001)("The Board argues that as a municipality, it cannot be held liable for punitive damages under §§ 1981, 1983, 1985 or Title VII. We agree.'). The plaintiff makes no mention of punitive damages or defendants' argument in her response brief, so she has waived any challenge to it. *Webb*, 906 F.3d at 581; *Bonte*, 624 F.3d at 466; *Farris*, 532 F.3d at 619. The plaintiff's claims for punitive damages against the Board is stricken.

**CONCLUSION**

The Defendant's Motion to Dismiss the Complaint [Dkt. #14] is denied as to Counts I, II (First Amendment Claims and qualified immunity), IV (Illinois Whistleblower Act), V (retaliatory discharge), and VII (intentional infliction of emotional distress). While the Motion to Dismiss is granted as to Counts III (Due Process) and VI (civil conspiracy), the dismissal is without prejudice. The defendants' Motion is also granted as to plaintiff's claim for punitive damages against the Board of Education.

**ENTERED:** _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 2/24/25

18